Case No. 24-4073

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

**CESAR AGUAYO-MONTES,**

**Petitioner/Appellant,**

**v.**

**UNITED STATES OF AMERICA,**

**Respondent/Appellee.**

On Appeal from the United States District Court
For the District of Utah, Southern Division
The Honorable David Nuffer, District Judge
District Court Case No. 4:23-cv-45-DN

## BRIEF FOR THE UNITED STATES OF AMERICA

FELICE JOHN VITI
Acting United States Attorney
District of Utah

BRIGGS MATHESON
Assistant United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone (801) 524-5682
briggs.matheson@usdoj.gov

Attorneys for Respondent/Appellee

**ORAL ARGUMENT IS NOT REQUESTED**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................iii

STATEMENT OF PRIOR AND RELATED APPEALS ..................................... vi

STATEMENT OF THE ISSUES...................................................................1

STATEMENT OF THE CASE......................................................................1

    1. Aguayo pleads guilty to possessing heroin after being advised that he could be removed from the United States.........................................................................1

    2. Aguayo is advised again about the possibility of removal prior to sentencing .................................................3

    3. Aguayo files a § 2255 motion alleging ineffective assistance of counsel ...........................................................3

SUMMARY OF THE ARGUMENT...............................................................5

STANDARD OF REVIEW .........................................................................7

ARGUMENT...........................................................................................7

    I.    Legal standards...............................................................7

    II.    Aguayo fails to show that his lawyer's advice fell below an objective standard of reasonableness............9

        A. Aguayo's attorney properly advised him that his guilty plea carried a risk of removal.....................9

        B. *Padilla v. Kentucky* did not require Aguayo's attorney to inform his client that removal was virtually certain to occur ............................................10

    III.    Aguayo cannot show prejudice.......................................21

        A. It would not have been objectively rational for Aguayo to reject the plea agreement .........................23

i

**B.** **Aguayo cannot establish that he would have gone to trial with different advice about the likelihood of his removal** ............................................. 25

CONCLUSION ..................................................................................... 31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

CASES                                                          PAGE(S)

*Abraham v. United States*, 699 F.3d 1050 (8th Cir. 2012) ..................... 29

*Auer v. Robbins*, 519 U.S. 452 (1997) ....................................................... 12

*Blackledge v. Allison*, 431 U.S. 63 (1977) .............................................. 27

*Boyle v. McKune*, 544 F.3d 1132 (10th Cir. 2008) ................................... 8

*Chaidez v. United States*, 568 U.S. 342 (2013) ....................................... 13

*Dat v. United States*, 983 F.3d 1045 (8th Cir. 2020) ........................ 15, 16

*Demore v. Kim*, 538 U.S. 510 (2003) ......................................................... 12

*Farhane v. United States*, 121 F.4th 353 (2d Cir. 2024) ................... 13, 14

*Headley v. United States*, 804 F. App'x 973 (10th Cir. 2020) ................ 24

*Heard v. Addison*, 728 F.3d 1170 (10th Cir. 2013) .............. 23, 24, 25, 26

*Hill v. Lockhart*, 474 U.S. 52 (1985) ................................................. 7, 21

*Knowles v. Mirzayance*, 556 U.S. 111 (2009) .......................................... 8

*Lee v. United States*, 582 U.S. 357 (2017) ........................... 26, 27, 29, 30

*Missouri v. Frye*, 566 U.S. 134 (2012) ...................................................... 7

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ........ 4-6, 9-14, 16, 19-21, 23, 25

*Rippey v. Utah*, 783 F. App'x 823 (10th Cir. 2019) ........................... 27, 28

*Salgado v. Martinez*, No. 23-2032, 2023 WL 8539949 (10th Cir. Dec. 11, 2023) .................................................................................... 22

*Solis v. Garland*, No. 22-9536, 2023 WL 3302871 (10th Cir. May 8, 2023) ...................................................................................... 15

*State v. Shata*, 2015 WI 74, (2015) .......................................................13

*Strickland v. Washington*, 466 U.S. 668 (1984)....................................7, 8

*United States v. Alvarez*, 137 F.3d 1249 (10th Cir. 1998) ......................21

*United States v. Babcock*, 40 F.4th 1172 (10th Cir. 2022)........................7

*United States v. Bustillos*, 31 F.3d 931 (10th Cir. 1994) .........................8

*United States v. Carr*, 80 F.3d 413 (10th Cir. 1996)................................7

*United States v. Carrillo-Estrada*, 564 F. App'x 385 (10th Cir. 2014).................................................................................................18

*United States v. Clark*, 596 F. App'x 696 (10th Cir. 2014).....................26

*United States v. Dominguez*, 998 F.3d 1094 (10th Cir. 2021)................................................................. 8, 22, 23, 24, 25

*United States v. Fabiano*, 42 F. App'x 408 (10th Cir. 2002)....................8

*United States v. Gilchrist*, 685 F. App'x 638 (10th Cir. 2017)................25

*United States v. Gomez–Alvarez*, 482 F. App'x 330 (10th Cir. 2012)................................................................................... 16, 17

*United States v. Gomez-Lugo*, 410 F. App'x 148 (10th Cir. 2011)..........30

*United States v. Gordon*, 4 F.3d 1567 (10th Cir. 1993) ....................26, 28

*United States v. Hamilton*, 510 F.3d 1209 (10th Cir. 2007)...................28

*United States v. Kearn*, 90 F.4th 1301 (10th Cir. 2024) ........................23

*United States v. Maujer*, No. 21-6087, 2021 WL 5458425 (10th Cir. Nov. 23, 2021) ...................................................................................25

*United States v. Nunez*, 489 F. App'x 295 (10th Cir. 2013).............. 17, 18

*United States v. Nunez*, Nos. 09–40039–01, 11–4118–RDR, 2012 WL 1701664 (D. Kan. May 3, 2012) .................................................17

*United States v. Ramirez-Jimenez*, 907 F.3d 1091 (8th Cir. 2018) .................................................................... 10, 15, 16

*United States v. Reed*, 39 F.4th 1285 (10th Cir. 2022) ...........................28

*United States v. Rodriguez-Vega*, 797 F.3d 781 (9th Cir. 2015) .................................................................... 18, 19, 20

*United States v. Roman*, No. 15-cv-01173-CMA, 2015 WL 12857313 (D. Colo. Aug. 27, 2015) ....................................................11

*United States v. Salazar*, 987 F.3d 1248 (10th Cir. 2021) .......................8

*United States v. Sanchez-Leon*, 764 F.3d 1248 (10th Cir. 2014) ............28

*United States v. Saucedo-Avalos*, 753 F. App'x 561 (10th Cir. 2018).....24

*United States v. Singh*, 95 F.4th 1028 (6th Cir. 2024) ..........................28

*United States v. Swaby*, 855 F.3d 233 (4th Cir. 2017).................... 18, 19

*United States v. Urias-Marrufo*, 744 F.3d 361 (5th Cir. 2014) .............13

STATUTES

8 U.S.C. § 1227 ................................................................... 14, 20

8 U.S.C. § 1231(b)(3)(B)(ii) ................................................................15

21 U.S.C. § 841(a) ................................................................29

21 U.S.C. § 841(a)(1) ................................................................1, 9

28 U.S.C. § 2255 ................................................................3

REGULATIONS

8 C.F.R. § 1208.17(a) ................................................................15

OTHER AUTHORITIES

R. McWhirter, ABA, The Criminal Lawyer's Guide to Immigration
    Law: Questions and Answers 128 (2d ed. 2006) ...............................14

## STATEMENT OF PRIOR AND RELATED APPEALS

There are no prior or related appeals.

Prior to pleading guilty to a drug trafficking offense, Aguayo was informed by his attorney and by the district judge that he could be removed from the United States as a result of his conviction. Aguayo confirmed under oath that he understood that, and he pled guilty anyway. Was his counsel's advice constitutionally deficient because it did not inform Aguayo that his removal was a virtual certainty?

## STATEMENT OF THE CASE

**1. Aguayo pleads guilty to possessing heroin after being advised that he could be removed from the United States**

Four years ago, police officers in Washington City, Utah, arrested Aguayo and his girlfriend after they were caught transporting more than sixteen pounds of heroin from California on their way to Colorado. ROA Vol. II at 9-10. Aguayo was charged in a one-count felony Information with possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). *Id.* at 9.

He pled guilty six months later. ROA Vol. I at 152-58. As part of his Rule 11(c)(1)(C) plea agreement, Aguayo acknowledged and agreed that, as a consequence of his conviction, he "may be removed from the

1

United States[.]" *Id.* at 153 ¶ 2(b). Aguayo also stated in the agreement that (i) he had discussed the plea "with [his] lawyer as much as [he] wish[ed]" and that he had "no additional questions"; (ii) he was "satisfied with [his] lawyer"; (iii) his "decision to enter this plea was made after full and careful thought; with the advice of counsel; and with a full understanding of [his] rights, the facts and circumstances of the case and the consequences of the plea"; (iv) he had "no mental reservations concerning the plea"; and (v) he "agree[d] with the terms and all of the statements" in the agreement. *Id.* at 157.

At the change-of-plea hearing, Aguayo admitted his guilt and confirmed that he did not wish to proceed to trial. *Id.* at 178-79. He further acknowledged that he is not a United States citizen; that he had reviewed the plea agreement "in detail" with his attorney; and that he understood "that pleading guilty could [affect his] ability to remain in or return to the United States." *Id.* at 176-77. Following a thorough Rule 11 plea colloquy, the district judge found that Aguayo was "aware of the nature of the charge and the consequences of [his] plea, that the plea has been knowing and voluntary, and the elements are met and supported by facts." *Id.* at 179-80.

### 2. Aguayo is advised again about the possibility of removal prior to sentencing

The probation office prepared a presentence investigation report (PSR) that assigned Aguayo an offense level of 27, which, combined with his criminal history category I, resulted in a Guidelines range of 70 to 87 months. ROA Vol. II at 15 ¶ 55. The PSR further noted that, "According to Immigration and Customs Enforcement (ICE), this conviction may subject the defendant to deportation to Mexico." *Id.* at 12 ¶ 36. Aguayo objected only to the PSR's listing of his height as 5 feet 2 inches, when he is actually 5 feet 11 inches. ROA Vol. III at 108. The district court sentenced Aguayo to the parties' agreed-upon 37-month sentence—about half of the low end of Aguayo's Guidelines range. ROA Vol. I at 164-65 (Judgment). Aguayo never sought to withdraw his guilty plea, nor did he file a direct appeal.

### 3. Aguayo files a § 2255 motion alleging ineffective assistance of counsel

One year later, Aguayo filed a motion pursuant to 28 U.S.C. § 2255 asserting that his guilty plea was the result of ineffective assistance of counsel. ROA Vol. I at 5-13. In it, he acknowledged that, before pleading guilty, he and his attorney had reviewed the paragraph

of the plea agreement indicating that Aguayo "may be removed from the United States." *Id.* at 8. But Aguayo's § 2255 motion alleged that when he asked his attorney what that meant, his attorney told him he was "not an immigration attorney and could not tell him what would happen." *Id.* at 9. According to Aguayo, his attorney also "said that he didn't need to worry about that until he got to prison and that once he was in prison, he could contact an immigration lawyer." *Id.* Aguayo argued that, while he understood that he *may* be removed from the United States, his attorney's advice fell short of the guidance required by the Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010), which obligated Aguayo's attorney to inform him that he would be "automatically deported" upon conviction.[1] *Id.* at 11; *see also id.* at 49.

The district court rejected Aguayo's argument that *Padilla* "require[d] counsel to explain that deportation is a 'certain' or 'definite' result from a guilty plea, and not just a 'possibility'" in these

---

[1] Aguayo's defense counsel in his underlying criminal case passed away prior to the district court's adjudication of Aguayo's § 2255 motion. ROA Vol. III at 11. Aguayo's allegations therefore comprise the only account of what his attorney allegedly told him before he pled guilty.

circumstances. *Id.* at 110. It was sufficient, the court reasoned, that Aguayo's counsel informed him that his plea "'carrie[d] a *risk* of deportation.'" *Id.* at 108 (quoting *Padilla*, 559 U.S. at 374) (emphasis in original). And the record in Aguayo's case confirmed both that he understood the "possibility of his deportation" prior to pleading guilty, and that his lawyer did not "falsely assure" him "that he would not be deported." *Id.* at 111-12. The court denied Aguayo's claim, but it granted a Certificate of Appealability in light of the "substantial legal questions" at issue that "have not been authoritatively decided by the Tenth Circuit[.]"[2] *Id.* at 113.

This appeal followed.

**SUMMARY OF THE ARGUMENT**

Aguayo's ineffective-assistance claim fails both prongs of *Strickland v. Washington*'s test. First, Aguayo was advised repeatedly—by his counsel, by the written plea agreement, and by the district judge—that by pleading guilty, he could be removed from the

---

[2] Aguayo also argued below that his guilty plea was not "knowing and voluntary" under the Due Process Clause of the Fifth Amendment, because he was not "fairly apprised" that "pleading guilty would result in certain deportation." ROA Vol. I at 9-10. Aguayo does not challenge the district court's denial of that claim in this appeal. Aplt. Br. at 5.

United States.  The Supreme Court's decision in *Padilla v. Kentucky* did not impose any further duty on Aguayo's lawyer to advise him that removal from this country was virtually certain to occur.  As this Court and others have explained, *Padilla* requires defense counsel to "inform her client *whether* his plea carries a *risk* of deportation."  *Padilla*, 559 U.S. at 374 (emphasis added).  Aguayo's counsel did just that.  Aguayo fails to rebut the presumption that his counsel's performance fell within the wide range of acceptable standards.

Second, although not addressed by the court below, the record is sufficient to show that Aguayo cannot satisfy *Strickland*'s prejudice prong, either.  There is no reasonable probability that Aguayo would have insisted on going to trial had he been told his removal was "virtually certain" to result from his guilty plea.  His *post hoc*, self-serving statements to the contrary cannot overcome the presumed truthfulness of what he previously stated under oath—that he understood he could be removed from the United States, and that he wished to plead guilty anyway.  This Court should affirm.

In a § 2255 appeal, this Court reviews the district court's legal rulings *de novo* and its factual findings for clear error. *United States v. Babcock*, 40 F.4th 1172, 1176 (10th Cir. 2022).

## ARGUMENT

### I. Legal standards

Defendants have a Sixth Amendment right to counsel that extends to the plea-bargaining process. *Missouri v. Frye*, 566 U.S. 134, 140-41 (2012). The "two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). That test requires a § 2255 petitioner alleging a violation of his Sixth Amendment rights to show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that prejudice resulted. *See generally Strickland v. Washington*, 466 U.S. 668 (1984).

To satisfy the first prong, a petitioner must show that his attorney "materially misinform[ed]" him of "the consequences of the plea." *United States v. Carr*, 80 F.3d 413, 418 (10th Cir. 1996). And in doing so, the petitioner must overcome the "strong presumption" that his

attorney provided reasonable professional assistance by showing that the "representation was unreasonable under prevailing professional norms." *Boyle v. McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008); *Strickland*, 466 U.S. at 689. This Court's review of counsel's performance under this standard "must be highly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009).

To satisfy *Strickland*'s second prong, a § 2255 petitioner must show a "reasonable probability" that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *United States v. Dominguez*, 998 F.3d 1094, 1111 (10th Cir. 2021). A reasonable probability in this context "necessitates a substantial, not just conceivable, likelihood of a different result." *Id.* (cleaned up).[3]

---

[3] Although Aguayo completed his custodial status and was removed to Mexico, ROA Vol. III at 11, he was "in custody at the time of initiating the petition." *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994); *see also United States v. Fabiano*, 42 F. App'x 408, 411 (10th Cir. 2002) (unpublished) (when a prisoner is subject to supervised release, he is still " 'in custody' " for § 2255 purposes). His appeal is not moot in light of his unexpired term of supervised release. *See United States v. Salazar*, 987 F.3d 1248, 1253 (10th Cir. 2021).

## II. Aguayo fails to show that his lawyer's advice fell below an objective standard of reasonableness

### A. Aguayo's attorney properly advised him that his guilty plea carried a risk of removal

Aguayo was repeatedly advised by his lawyer, by the plea agreement he signed, and by the district court that by pleading guilty to violating 21 U.S.C. § 841(a)(1), he could be removed from the United States. The Sixth Amendment required nothing more.

In the guilty-plea context, effective assistance requires defense counsel to "inform her client *whether* his plea carries a *risk* of deportation." *Padilla*, 559 U.S. at 374 (emphasis added). That's precisely what Aguayo's counsel did. As Aguayo states in his § 2255 motion, prior to entering his guilty plea, he and his attorney discussed paragraph 2(b) of the plea agreement. ROA Vol. I at 8-9. That provision plainly states: "I understand that, if I am not a United States citizen, *I may be removed from the United States*, denied citizenship, and denied admission to the United States in the future." *Id.* at 153 (emphasis added).

After discussing that provision with his attorney, Aguayo executed the plea agreement and affirmed that he had "no additional questions"

9

about any of the agreement's terms. *Id.* at 157. He also verified that that he had a "full understanding" of "the consequences of the plea." *Id.* The following day, he confirmed under oath that he had reviewed the plea agreement "in detail" with his attorney, he had enough time to consult his attorney and had no further questions about its terms, he was satisfied with the representation, and he understood "that pleading guilty could [affect his] ability to remain in or return to the United States." *Id.* at 176-77. The record leaves no doubt that Aguayo was "inform[ed]" that by pleading guilty, he risked being removed from this country. *Padilla*, 559 U.S. at 374.

**B.** ***Padilla v. Kentucky* did not require Aguayo's attorney to inform his client that removal was virtually certain to occur**

Aguayo contends that his attorney's advice was constitutionally deficient because *Padilla* required his attorney to inform him that removal was a "virtual certainty." Aplt. Br. at 8. But that argument "misinterprets *Padilla* and is based on a false premise." *United States v. Ramirez-Jimenez*, 907 F.3d 1091, 1094 (8th Cir. 2018) (per curiam).

In *Padilla*, defense counsel falsely assured the defendant that his drug conviction "would not result in his removal from this country." 559

10

U.S. at 368. That advice, the Court explained, fell below an objective standard of reasonableness because "prevailing professional norms" supported "the view that counsel must advise her client regarding the risk of deportation." *Id.* at 367.

True, in characterizing the lawyer's erroneous advice as objectively unreasonable, *Padilla* also stated that counsel must "give correct advice" when "the deportation consequence is truly clear." *Id.* at 369. But *Padilla* "did not specify the situations in which a removal consequence is 'truly clear.'" *United States v. Roman*, No. 15-cv-01173-CMA, 2015 WL 12857313, *7 (D. Colo. Aug. 27, 2015). Nor did the Court hold that a defense attorney must advise her client that deportation is certain to occur upon conviction for a deportable offense. Indeed, in evaluating the immigration consequences of Padilla's guilty plea, the Supreme Court did *not* state that his removal from the United States was a "virtual certainty." Aplt. Br. at 7. It simply explained that Padilla's conviction rendered him "deportable"—nothing more, nothing less. *See* 559 U.S. at 359 n.1 ("Padilla's crime . . . is a deportable offense under 8 U.S.C. § 1227(a)(2)(B)(i).").

Under those circumstances, the Court observed, "constitutionally competent counsel . . . would have advised him that his conviction for drug distribution made him *subject to* automatic deportation." *Id*. at 360 (emphasis added).[4] In other words, by pleading guilty, Padilla became "prone" or "disposed" to being automatically deported. *Cf. Auer v. Robbins*, 519 U.S. 452, 461 (1997) (discussing the meaning of "subject to"). But becoming *subject to* automatic deportation is not the same thing as *being* automatically deported. *Cf. Demore v. Kim*, 538 U.S. 510, 522 n.6 (2003) (observing that a defendant's concession that "he is '*deportable*'" is not a concession "that he *will ultimately be deported*" (emphasis in original)). Sentencing judges do not impose removal consequences that follow a criminal conviction. Rather, removal proceedings "that follow entry of a guilty plea" require "an additional judicial or agency proceeding" before removal may actually occur.

---

[4] Aguayo argues that his counsel's statement "not to worry" (ROA Vol. I at 9) is no different from Padilla's counsel's "false assurance" that his client's conviction "would not result in his removal from this country." 559 at 368. But Aguayo does not contend that his attorney falsely assured him that he would *not* be removed. Rather, he contends that his attorney rendered constitutionally deficient advice by telling Aguayo only that he *might* be removed, and not that his conviction would "automatically trigger[] mandatory deportation." ROA Vol. I at 11.

*Farhane v. United States*, 121 F.4th 353, 368 (2d Cir. 2024) (en banc).

And as *Padilla* itself explained, even when a noncitizen is convicted for drug trafficking and becomes "deportable," the Attorney General retains limited discretion to cancel removal for certain classes of offenses. *Id.* at 363-64 (footnote omitted).

It's no surprise, then, that *Padilla* "did *not* hold that an attorney must inform an alien client that a conviction for a deportable offense will absolutely result in deportation." *State v. Shata*, 2015 WI 74, ¶ 61, (2015) (discussing *Padilla*) (emphasis in original). Nor has the Supreme Court suggested in the years following *Padilla* "that counsel is obligated under the Sixth Amendment to explain that deportation is 'certain' to result from a guilty plea." *United States v. Urias-Marrufo*, 744 F.3d 361, 370 (5th Cir. 2014) (Garza, J., concurring). Quite the opposite: in *Chaidez v. United States*, the Supreme Court restated *Padilla*'s holding as follows: "We held that criminal defense attorneys must inform non-citizen clients of the *risks* of deportation arising from guilty pleas.'" 568 U.S. 342, 346-47 (2013) (emphasis added).

There is good reason why *Padilla* focused on requiring counsel to advise "whether [her client's] plea carries a risk of deportation." 559

U.S. at 374; *see Farhane*, 121 F.4th at 368 (explaining that *Padilla* "repeatedly stressed that constitutionally effective counsel has an obligation to warn of a '*risk* of deportation'" (quoting *Padilla*, 559 U.S. at 366) (emphasis in original)).  Immigration law is "complex."  *Padilla*, 559 U.S. at 369.  So when "the deportation consequences of a particular plea are unclear or uncertain," practitioners face a more "limited" duty. *Id.*  While a conviction for an aggravated felony renders a noncitizen deportable under 8 U.S.C. § 1227(a)(2)(A)(iii), "'nothing is ever simple with immigration law,'" especially where aggravated felonies are involved.  *Id.* at 378 (Alito, J., concurring) (quoting R. McWhirter, ABA, The Criminal Lawyer's Guide to Immigration Law: Questions and Answers 128 (2d ed. 2006)).

Indeed, noncitizen defendants who plead guilty to aggravated felonies may still avoid removal under certain circumstances.  Often, however, the "intricacies of immigration law" make that difficult to ascertain.  *Id.* at 379-80.  For example, noncitizens convicted of "particularly serious crimes"—including aggravated felonies for which a sentence of more than five-years is ordered—are statutorily ineligible for discretionary relief in the form of withholding of removal, while

those convicted of aggravated felonies that are not "particularly serious" may not be.  *See* 8 U.S.C. § 1231(b)(3)(B)(ii).  A noncitizen convicted of an aggravated felony involving drug trafficking may be eligible for withholding of removal "when the circumstances are 'extraordinary and compelling.'"  *Solis v. Garland*, No. 22-9536, 2023 WL 3302871, at *1-*2 (10th Cir. May 8, 2023) (unpublished).  And a noncitizen with a deportable conviction—including for an aggravated felony involving drug trafficking—may still seek relief from removal under the Convention Against Torture.  *See Dat v. United States*, 983 F.3d 1045, 1048 (8th Cir. 2020); 8 C.F.R. § 1208.17(a) (providing for deferral of removal under the Convention Against Torture).

"These immigration law complexities should caution any criminal defense attorney not to advise a defendant considering whether to plead guilty that the result of a post-conviction, contested removal proceeding is clear and certain."  *Ramirez-Jimenez*, 907 F.3d at 1094 (rejecting the argument that *Padilla* requires advice about whether removal is

"certain").[5]  And because even "[t]he cautious practitioner" often "will not know conclusively the future immigration consequences of a guilty plea," *Padilla*, 559 U.S. at 381 (Alito, J., concurring) (quotation marks omitted)), advice that a guilty plea "carries a risk of deportation" suffices under the Sixth Amendment.  *Padilla*, 559 U.S. at 369.

Consistent with that approach, this Court has held *Padilla* satisfied where it was "clear from the record" that the defendant "had been informed by his counsel that a guilty plea *could* result in deportation."  *United States v. Gomez–Alvarez*, 482 F. App'x 330, 335–336 (10th Cir. 2012) (unpublished) (emphasis added).  In *Gomez-Alvarez*, the defendant (like Aguayo) "responded affirmatively," when asked (i) "whether he had been informed of the consequences of pleading guilty," and (ii) "if he understood that [his] plea of guilty may

---

[5] Aguayo contends that *Ramirez-Jimenez*'s interpretation of *Padilla* "cannot be taken as an authoritative pronouncement" because *Ramirez-Jimenez* was a direct appeal.  Aplt. Br. at 24.  But that ignores the Eighth Circuit's observation that the record was sufficient to determine that his ineffectiveness claim lacked merit because it rested on the same "misinterpret[ation]" of *Padilla* that forms the substrate of Aguayo's claim.  907 F.3d at 1094.  And as Aguayo concedes, the Eighth Circuit reaffirmed *Ramirez-Jimenez*'s interpretation of *Padilla* in a subsequent § 2255 appeal.  Aplt. Br. at 26-27 (citing *Dat*, 983 F.3d at 1048).

result in an order of deportation from the United States." *Id.* (quotation marks omitted). That was enough to reject the defendant's "claim that his counsel was ineffective in failing to advise him of the immigration consequences of pleading guilty." *Id.*

Similarly, in *United States v. Nunez*, the defendant (Nunez) brought a § 2255 motion to vacate his conviction for conspiracy to distribute methamphetamine on the same grounds Aguayo asserts here—because his lawyer allegedly failed to advise him about the immigration consequences of his guilty plea. *United States v. Nunez*, 489 F. App'x 295, 296 (10th Cir. 2013) (unpublished). Like Aguayo, Nunez signed a plea agreement informing him that his conviction "may result in deportation from the United States." *See United States v. Nunez*, Nos. 09–40039–01, 11–4118–RDR, 2012 WL 1701664 at *3 (D. Kan. May 3, 2012). Like Aguayo, Nunez affirmed in the agreement that he read and understood the plea, discussed it with his lawyer as much as he liked, and was satisfied with his lawyer's representation. *Id.* And at the plea hearing, Nunez swore that his statements in the written plea agreement were true and that he understood his conviction would result in his removal. *Id.*

This Court affirmed the district court's denial of Nunez's motion because the record "conclusively refuted" Nunez's allegations. *Nunez*, 489 F. App'x at 296. In particular, his "own statements at the change of plea hearing and at sentencing[] clearly demonstrated that [he] was indeed informed of the *possibility* of deportation." *Id.* (emphasis added). *Cf. United States v. Carrillo-Estrada*, 564 F. App'x 385, 387 (10th Cir. 2014) (unpublished) (rejecting defendant's due process claim "that he was not adequately apprised of the possibility of deportation" where his plea agreement "cautioned him that he *might* be removed from the U.S. if convicted" (emphasis added)).

So too here: Aguayo was repeatedly informed that he might be removed from the United States for pleading guilty, and he confirmed that he understood as much. That was all *Padilla* required.

Aguayo's reliance on decisions from the Ninth and Fourth Circuits misses the mark. Aplt. Br. at 11-15 (discussing *United States v. Rodriguez-Vega*, 797 F.3d 781 (9th Cir. 2015), and *United States v. Swaby*, 855 F.3d 233 (4th Cir. 2017)). First, those decisions are distinguishable because, in both cases, counsel erroneously advised the defendant that the plea had been structured to avoid automatic

18

deportation when, in fact, both cases involved pleas to offenses that were considered aggravated felonies. In *Rodriguez-Vega*, counsel told his client "that 'she had a better chance with Immigration'" by pleading guilty to a misdemeanor rather than "the charged felony," despite the fact that both offenses qualified as aggravated felonies under 8 U.S.C. § 1227(a)(2)(A)(iii). 797 F.3d at 789. And in *Swaby*, the defendant unknowingly pled guilty to an aggravated felony because his attorneys thought the wrong criminal counterfeiting statute applied to his case. 855 F.3d at 237. Thus, both cases found deficient performance where counsel provided "false assurance" that the defendant was pleading guilty to an offense that might not subject him to automatic deportation. *Padilla*, 559 U.S. at 368. Here, by contrast, Aguayo's counsel did not mislead him into believing that his plea had been designed to avoid conviction for an automatically deportable offense.

What's more, in *Rodriguez-Vega*, the Ninth Circuit emphasized that counsel's advice was deficient because his "statements made after [the defendant] had already pled guilty, that she faced a 'high likelihood' of removal, [did not] satisfy his duty to accurately advise his client of the removal consequences of a plea *before* she enters into it."

797 F.3d at 787 (emphasis in original).  But here, Aguayo was informed and understood before he pled guilty that he could be deported because of his conviction.  *See* ROA Vol. I at 153-57, 176-77.

In any event, to the extent that *Rodriguez-Vega* and *Swaby* hold that counsel must advise that deportation is a "virtual certainty" in every case where a defendant pleads guilty to an aggravated felony, they are inconsistent with *Padilla*, this Court's prior (albeit unpublished) decisions, and the Eighth Circuit's decisions in *Ramirez-Jimenez* and *Dat*.  *Padilla* itself says nothing about advising a noncitizen defendant that a conviction for a deportable defense will "certainly" or "absolutely" result in his removal from the United States.  Nor does the relevant statute describe automatically deporting offenders—it speaks only in terms of a noncitizen's deportable status.  *See* 8 U.S.C. § 1227.  And what matters for Sixth Amendment purposes is counsel's advice about "whether [the defendant's] plea carries a risk of deportation."  *Padilla*, 559 U.S. at 374.  That is precisely what Aguayo's lawyer, his plea agreement, and the district court all cautioned him.  ROA Vol. I at 8-9, 153, 157 176-77.

20

The information Aguayo received from his attorney about immigration consequences pales in comparison to the "erroneous advice" that Padilla received. "Padilla's counsel provided him false assurance that his conviction *would not result in his removal* from this country." *Padilla,* 559 U.S. at 368 (emphasis added). As the district court noted, Aguayo's counsel did no such thing. ROA Vol. I at 111. Aguayo fails to rebut the presumption that his counsel's advice fell within the wide range of acceptable standards under the Sixth Amendment.

## III. Aguayo cannot show prejudice

Aguayo also failed to establish prejudice by showing a reasonable probability that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Although the court below found it unnecessary to reach the prejudice prong, this Court has discretion to affirm on "any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *United States v. Alvarez*, 137 F.3d 1249, 1251 (10th Cir. 1998). The parties fully briefed the prejudice issue below. *See* ROA Vol. I at 11-12, 22-28, 54-57. And the record is

sufficient to answer the legal question whether Aguayo was prejudiced by his attorney's advice. *See Salgado v. Martinez*, No. 23-2032, 2023 WL 8539949, at \*10 (10th Cir. Dec. 11, 2023) (unpublished) ("[A]lthough the district court resolved this on *Strickland*'s deficient-performance prong, we instead see no debatable issue on the prejudice prong."). The record shows conclusively that he was not.[6]

"It is often quite difficult for defendants who have acknowledged their guilt to satisfy *Strickland*'s prejudice prong." *Dominguez*, 998 F.3d at 1112 (quotation marks omitted) (cleaned up). Aguayo is no exception. As noted, Aguayo "must show that there is a reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 1111 (quotation marks omitted). In *Padilla*, the Supreme Court clarified that, "to obtain relief on an ineffective-assistance-of-counsel claim under *Strickland*, a defendant challenging his guilty plea 'must convince the court that [his] decision to reject the plea . . . would have been *rational under the*

---

[6] There is no need to remand for further factual development on prejudice. Aguayo's § 2255 motion provides his account of what his counsel allegedly told him before he pled guilty. As noted *supra* note 1, Aguayo's counsel has passed away.

*circumstances.'"* *Id.* at 1112 (quoting *Padilla*, 559 U.S. at 372) (emphasis in original). This Court has "incorporated and subsumed this 'rationality' factor into *Strickland*'s reasonable-probability prejudice inquiry." *Id.*; *see also United States v. Kearn*, 90 F.4th 1301, 1306 (10th Cir. 2024) ("The prejudice inquiry is largely objective."). *Padilla*'s "rationality" requirement thus sets "an objective *floor*" or "threshold" a petitioner must satisfy before the Court will "ascertain[]"—based on "the individual defendant's statements and conduct"—whether "he has satisfied the more demanding 'reasonable probability' threshold." *Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir. 2013) (citations omitted); *Dominguez*, 998 F.3d at 1112. Aguayo satisfies neither.

## A. It would not have been objectively rational for Aguayo to reject the plea agreement

Start with objective rationality. Aguayo affirmed in his signed plea agreement and during his plea colloquy with the district court that he was satisfied with his lawyer's services. ROA Vol. I at 157, 176-77. He had good reason to say so: Aguayo's attorney negotiated an especially favorable bargain on his client's behalf. Aguayo faced a Guidelines range of 70 to 87 months. ROA Vol. II at 15 ¶ 55. By

pleading guilty, Aguayo received a sentence (37 months) that was almost half of the low-end of his Guidelines range.

Aguayo was subject to removal if convicted, regardless of whether the conviction followed a trial or a guilty plea. His only chance to avoid removal was therefore an acquittal. But the evidence of Aguayo's guilt was overwhelming (*see* ROA Vol. II at 9-10), and Aguayo neither "assert[s] that he is innocent of the charged crime[,]" nor does he identify any "weaknesses" in the government's case that "would have made it more rational for him to reject the plea agreement" and proceed before a jury. *Dominguez*, 998 F.3d at 1114. All he offers is the "bald, *post hoc* and unsupported statements" that he told his attorney he was concerned about his ability to remain in the United States, and "that [he] would have changed his plea absent counsel's errors." *Heard*, 728 F.3d at 1184. That is not enough to satisfy *Padilla*'s objective "rationality requirement." *Headley v. United States*, 804 F. App'x 973, 979 (10th Cir. 2020) (unpublished); *see also United States v. Saucedo-Avalos*, 753 F. App'x 561, 564 (10th Cir. 2018) (unpublished) (defendant's "mere allegation of having insisted on going to trial is not

24

enough" to show prejudice where "the record did not reveal any viable defense to the charge").

Simply put, it would not have been objectively "'rational under the circumstances'" to reject the government's significantly below-Guidelines plea deal. *Dominguez*, 998 F.3d at 1112 (quoting *Padilla*, 559 U.S. at 372); *see also, e.g., United States v. Maujer*, No. 21-6087, 2021 WL 5458425, *1 (10th Cir. Nov. 23, 2021) (unpublished) (petitioner could not show prejudice, despite assertion that he would have gone to trial, where the district court granted a substantial sentencing variance); *United States v. Gilchrist*, 685 F. App'x 638, 642 (10th Cir. 2017) (unpublished) (rejecting a § 2255 petitioner's ineffectiveness claim because a "rational defendant" facing a Guidelines range of 262 to 327 months "would not have rejected a plea agreement carrying a stipulated sentence of only 180 months").

B. **Aguayo cannot establish that he would have gone to trial with different advice about the likelihood of his removal**

The self-serving allegations in Aguayo's § 2255 motion are also insufficient to show "a reasonable probability that he would have gone to trial absent counsel's errors." *Heard*, 728 F.3d at 1184 (quotation

marks omitted).  To determine whether a defendant has met that "more demanding" standard, *id.*, this Court does "not ascribe *any* weight" to his "mere allegation that he would have proceeded to trial," *United States v. Clark*, 596 F. App'x 696, 702 (10th Cir. 2014) (unpublished) (citing *United States v. Gordon*, 4 F.3d 1567, 1571 (10th Cir. 1993)) (emphasis added).  It "instead look[s] to contemporaneous evidence" of his "expressed preferences" concerning the plea.  *Lee v. United States*, 582 U.S. 357, 369 (2017); *see also id.* (instructing courts not to "upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies").

The best "contemporaneous evidence" of those preferences are the defendant's sworn statements at the change-of-plea hearing.  In *Lee*, "[e]veryone agree[d] that Lee"—a noncitizen—"received objectively unreasonable representation" when his attorney erroneously informed him that the government "would not deport him if he pleaded guilty." 582 U.S. at 360.  The question remaining was whether Lee could "show he was prejudiced as a result."  *Id.*  To answer that question, the Supreme Court scrutinized Lee's plea colloquy and determined that he

had shown a reasonable probability that he "would have gone to trial"

absent his lawyer's bad advice based on the following exchange:

> When the [district] judge warned [Lee] that a
> conviction "could result in your being deported,"
> and asked "[d]oes that at all affect your decision
> about whether you want to plead guilty or not,"
> Lee answered "***Yes, Your Honor***."  When the
> judge inquired "[h]ow does it affect your decision,"
> Lee responded "***I don't understand***," and turned
> to his attorney for advice. Only when Lee's
> counsel assured him that the judge's statement
> was a "standard warning" was Lee willing to
> proceed to plead guilty.

*Id.* at 369 (citations omitted) (emphasis added).  Lee's plea colloquy

therefore left "no reason to doubt" his *post hoc* assertion that he would

not have pled guilty with different advice from his lawyer.  *Id.* at 370.

Not so here.  Aguayo's claim that he would have demanded a trial

is "belied by the representations he made at the plea hearing," which

"'carry a strong presumption of verity.'"  *Rippey v. Utah*, 783 F. App'x

823, 826 (10th Cir. 2019) (unpublished) (quoting *Blackledge v. Allison*,

431 U.S. 63, 74 (1977)).  As noted, at the change-of-plea hearing Aguayo

affirmed his understanding of the plea agreement, including the

potential immigration consequences of his conviction.  ROA Vol. I at

176-77.  When the district judge reminded him that "the plea could

27

affect his citizenship," Aguayo "expressed no reservations," "confirmed that he understood, and pled guilty anyway." *United States v. Singh*, 95 F.4th 1028, 1034 (6th Cir. 2024). "In light of the court's careful explanation of the plea's consequences" and Aguayo's "testimony that he understood those consequences," his "allegation that he would have gone to trial" with different advice from his attorney "is insufficient to establish prejudice." *United States v. Hamilton*, 510 F.3d 1209, 1216 (10th Cir. 2007); *see also United States v. Sanchez-Leon*, 764 F.3d 1248, 1260 (10th Cir. 2014) (rejecting the argument that defendant's attorney failed to explain the plea agreement because that "conflict[ed] with statements he made at the plea hearing" and did not "rebut the presumption that his statements made in court are true"); *Gordon*, 4 F.3d at 1571 (same); *Rippey*, 783 F. App'x at 826 (same).

Beyond the plea colloquy, the "best evidence of whether [a] defendant in fact would have changed his plea and insisted on going to trial" is "the strength of the prosecutor's case." *United States v. Reed*, 39 F.4th 1285, 1293 (10th Cir. 2022) (quotation omitted). As *Lee* acknowledged, "a defendant who has no realistic defense to a charge supported by sufficient evidence" will often be "unable to carry his

28

burden of showing prejudice from accepting a guilty plea." 582 U.S. at 366-67. That's the case here. The evidence against Aguayo included a backpack full of heroin that law enforcement officers watched Aguayo's girlfriend remove from his car, and that she later admitted to the officers contained narcotics.[7] ROA Vol. II at 9-10. In the absence of any attempt on Aguayo's part to attack or undermine the government's case against him, he cannot show that it is substantially likely he would have gone to trial with different advice from his counsel.

Finally this Court and others have held that "a defendant cannot satisfy *Strickland*'s prejudice prong when the PSR indicated a likelihood that [the defendant] would be deported if convicted; [the defendant] confirmed that he had read the PSR, discussed it with his counsel, and understood it; and [the defendant] never moved to withdraw his guilty plea." *Abraham v. United States*, 699 F.3d 1050, 1053 (8th Cir. 2012) (alterations in original) (quotation marks omitted);

---

[7] Aguayo's girlfriend, who played a minimal role and was "somewhat duped" by Aguayo into participating in the offense, pled guilty to violating 21 U.S.C. § 841(a) and received a sentence of 12 months plus 1 day in custody, followed by 3 years of supervised release. ROA Vol. II at 7; ROA Vol. III at 127-29.

*see also United States v. Gomez-Lugo*, 410 F. App'x 148, 150 (10th Cir. 2011) (unpublished) (defendant who "was plainly made aware that he could be deported" in his PSR could not establish prejudice). Aguayo's PSR did exactly that by informing him that his "conviction may subject [him] to deportation to Mexico." ROA Vol. II at 17 ¶ 76. Aguayo did not object to that statement in the PSR, nor did he indicate at sentencing that he had any questions or concerns about immigration consequences. That Aguayo never moved to withdraw his guilty plea further undermines his assertion that he would have insisted on going to trial absent his attorney's alleged errors.

In sum, Aguayo told the court below under oath, in writing and orally, that he understood the consequences of his decision to plead guilty—including that he could be removed from the United States— and that he wanted to plead guilty rather than go to trial. He fails to muster any evidence contemporaneous with his guilty plea that supports second guessing his "expressed preferences." *Lee*, 582 U.S. at 369.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's denial of Aguayo's § 2255 motion.

RESPECTFULLY SUBMITTED this 23rd day of April, 2025.

FELICE JOHN VITI
Acting United States Attorney


*/s/ Briggs Matheson*
BRIGGS MATHESON
Assistant United States Attorney
Utah Bar No. 18050
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
801.325.3221
briggs.matheson@usdoj.gov

**CERTIFICATE OF COMPLIANCE**

My brief was prepared in a proportionally spaced typeface and contains 6,032 words.  I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

*/s/ Briggs Matheson*  
BRIGGS MATHESON  
Assistant United States Attorney  
Utah Bar No. 18050  
111 South Main Street, Suite 1800  
Salt Lake City, Utah 84111  
801.325.3221  
briggs.matheson@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of the United States Attorney's Office, and an electronic copy via the ECF system of the foregoing BRIEF FOR THE UNITED STATES was served to all parties named below, this 23rd day of April, 2025.

Benji McMurray
Benji_McMurray@fd.org

/s/ *Stephanie Reinhart*
STEPHANIE REINHART
Paralegal